# 21-2581

*To be Argued by:* RAJIT S. DOSANJH

# United States Court of Appeals
## FOR THE SECOND CIRCUIT
### Docket No. 21-2581

UNITED STATES OF AMERICA,
*Appellee,*

v.

JORGE DIAZ-MEJIAS,
*Defendant,*

ESTEBAN MORALES-QUIRINO,
*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## BRIEF FOR APPELLEE UNITED STATES OF AMERICA

CARLA B. FREEDMAN
*United States Attorney*
*Northern District of New York*
100 South Clinton Street
Syracuse, NY 13261-7198
Tele: 315-448-0672
Email: Rajit.S.Dosanjh@usdoj.gov

RAJIT S. DOSANJH
*Assistant United States Attorney*
    *of Counsel*

# TABLE OF CONTENTS

Page

STATEMENT OF THE ISSUES
PRESENTED..................................................... 1

STATEMENT OF THE CASE ............................. 2

    A.  Introduction............................................ 2

    B.  Procedural History................................. 2

STATEMENT OF FACTS .................................... 5

    A.  Offense Conduct .................................... 5

    B.  Indictment and Governing
        Penalty Provisions ................................. 6

    C.  Plea Agreement and Guilty Plea ........... 6

    D.  Sentencing Proceedings.......................... 8

        1.  PSR .................................................. 8

        2.  Sentencing Submissions.................... 8

        3.  Sentencing Hearing .......................... 9

        4.  District Court Judgment ................. 12

    E.  Standard Conditions of
        Supervised Release in the
        Northern District of New York ........... 13

SUMMARY OF ARGUMENT ............................. 14

ARGUMENT ...................................................... 16

POINT I:

    The District Court Did Not Plainly Err
by Determining that Morales-Quirino
was Subject to a Five-Year Mandatory
Minimum Prison Term on Count Four. ...... 16

    A.  Governing Law ...................................... 16

    B.  Standard of Review ............................. 17

    C.  Discussion .............................................. 19

        1.  The meaning of the statutory
text is clear. .................................... 20

        2.  The legislative history of
§1324(a)(2) confirms its plain
meaning. .......................................... 21

        3.  The rule of lenity is
inapplicable. .................................... 22

        4.  The statute is not
unconstitutionally vague. ............... 22

        5.  Any error is not plain....................... 23

        6.  The sentence was
substantively reasonable. ............... 24

POINT II:

    Morales-Quirino Fails to Establish
Plain Error in the Imposition of
Standard Conditions 14 and 15. .................. 25

    A.  Standard of Review ............................. 25

    B.  Governing Law ...................................... 32

1. Mandatory, Discretionary, and Standard Conditions of Supervised Release ........................... 32

2. Requirements for Defendant's Presence When Imposing Conditions of Supervised Release ............................................ 33

C. Discussion .............................................. 35

CONCLUSION ..................................................... 44

# TABLE OF AUTHORITIES

**Cases:**

*Anders v. California,*
    386 U.S. 738 (1967) ........................................... 4

*Davis v. United States,*
    140 S. Ct. 1060 (2020) ................................ 30, 31

*Deal v. United States,*
    508 U.S. 129 (1993) ......................................... 22

*Henderson v. United States,*
    568 U.S. 266 (2013) .................................... 30, 31

*In re Sealed Case,*
    573 F.3d 844 (D.C. Cir. 2009) .......................... 18

*Malvasi v. U.S. Dep't of Prob.,*
    246 F. App'x 11 (2d Cir. 2007) .................. 38, 39

*Puckett v. United States,*
    556 U.S. 129 (2009) .................................... 28, 29

*Rosales-Mireles v. United States,*
    585 U.S. 129 (2018) .................................... 30, 31

*Samson v. California,*
    547 U.S. 843 (2006) ............................ 38, 40, 42

*United States v. Aguilar,*
    188 F. App'x 897 (11th Cir. 2006).................... 23

*United States v. Amerson,*
    483 F.3d 73 (2d Cir. 2007) ............................... 39

*United States v. Asuncion-Pimental,*
   290 F.3d 91 (2d Cir. 2002) ........................ 33, 34

*United States v. Balon,*
   384 F.3d 38 (2d Cir. 2024) ............................ 38

*United States v. Bernard,*
   No. 23-6646, 2024 WL 1904576
   (2d Cir. May 1, 2024)...................................... 31

*United States v. Bethel,*
   No. 22-14025, 2023 WL 7436912
   (11th Cir. Nov. 9, 2023).................................. 23

*United States v. Botti,*
   711 F.3d 299 (2d Cir. 2013) ........................... 23

*United States v. Brown,*
   352 F.3d 654 (2d Cir. 2003) ........................... 18

*United States v. Brown,*
   402 F.3d 133 (2d Cir. 2005) ........................... 41

*United States v. Carter,*
   696 F.3d 229 (2d Cir. 2012) ........................... 25

*United States v. Compres,*
   614 F. App'x 36 (2d Cir. 2015) ....................... 25

*United States v. Elder,*
   805 F. App'x 19 (2d Cir. 2020) ....................... 42

*United States v. Frady,*
   456 U.S. 152 (1982) ........................................ 18

*United States v. Gamez,*
   577 F.3d 394 (2d Cir. 2009) ........................... 30

*United States v. Gonzalez-Torres,*
  309 F.3d 594 (9th Cir. 2002) ............................ 23

*United States v. Gordon,*
  291 F.3d 181 (2d Cir. 2002) ............................ 17

*United States v. Green,*
  618 F.3d 120 (2d Cir. 2010) ............................ 28

*United States v. Hart,*
  852 F. App'x 596 (2d Cir. 2021) ...................... 31

*United States v. Haverkamp,*
  958 F.3d 145 (2d Cir. 2020) ............................ 28

*United States v. Hester,*
  589 F.3d 86 (2d Cir. 2009) .............................. 19

*United States v. Jacques,*
  321 F.3d 255 (2d Cir. 2003) ............................ 34

*United States v. Marcus,*
  560 U.S. 258, (2010) .................................. 24, 29

*United States v. Matta,*
  777 F.3d 116 (2d Cir. 2015) ............................ 28

*United States v. Montague,*
  67 F.4th 520 (2d Cir. 2023) ...................... 18, 35

*United States v. Mordini,*
  366 F.3d 93 (2d Cir. 2004) .............................. 27

*United States v. Newton,*
  369 F.3d 659 (2d Cir. 2004) ............................ 38

*United States v. Olano,*
  507 U.S. 725 (1993) .............................. 18, 30, 43

*United States v. Oliveras*,
  96 F.4th 298 (2d Cir. 2024) .............................. 38

*United States v. Ortega-Torres*,
  174 F.3d 1199 (11th Cir. 1999) ...... 20, 21, 22, 23

*United States v. Osuba*,
  67 F.4th 56 (2d Cir. 2023) ................................ 31

*United States v. Raad*,
  406 F.3d 1322 (11th Cir. 2005) ........................ 23

*United States v. Reeves*,
  591 F.3d 77 (2d Cir. 2010) ............................... 29

*United States v. Reyes*,
  283 F.3d 446 (2d Cir. 2002) ................ 38, 40, 42

*United States v. Rosario*,
  386 F.3d 166 (2d Cir. 2004) ....................... 33, 34

*United States v. Samas*,
  561 F.3d 108 (2d Cir. 2009) ............................ 25

*United States v. Sanchez*,
  773 F.3d 389 (2d Cir. 2014) ............................ 17

*United States v. Seamans*,
  No. 22-1119-CR, 2024 WL 177708
  (2d Cir. Jan. 17, 2024) .................................... 19

*United States v. Stuart*,
  No. 23-11760, 2024 WL 914027
  (11th Cir. Mar. 4, 2024) ................................... 23

*United States v. Tabb*,
  949 F.3d 81 (2d Cir. 2020) ............................... 22

*United States v. Thomas*,
299 F.3d 150 (2d Cir. 2002) ......................passim

*United States v. Traficante*,
966 F.3d 99 (2d Cir. 2020) .............................. 34

*United States v. Truscello*,
168 F.3d 61 (2d Cir. 1999) ............ 33, 34, 36, 37

*United States v. Tsai*,
282 F.3d 690 (9th Cir. 2002) ........................... 23

*United States v. Verkhoglyad*,
516 F.3d 122 (2d Cir. 2008) ............................ 27

*United States v. Villafuerte*,
502 F.3d 204 (2d Cir. 2007) ...................... 18, 25

*United States v. Wagner-Dano*,
679 F.3d 83 (2d Cir. 2012) .............................. 29

*United States v. Washington*,
904 F.3d 204 (2d Cir. 2018) ............................ 28

*United States v. Whab*,
355 F.3d 155 (2d Cir. 2004) ............................ 18

*United States v. Williams*,
399 F.3d 450 (2d Cir. 2005) ............................ 30

*United States v. Wright*,
86 F.3d 64 (5th Cir. 1996) ............................... 39

*United States v. Yeh*,
278 F.3d 9 (D.C. Cir. 2002) ............................. 23

**Federal Statutes, Rules and Other Authorities:**

8 U.S.C. §1324(a)(1)(A)(i) .................................. 2, 6

8 U.S.C. §1324(a)(1)(A)(v)(I) ............................... 2

8 U.S.C. §1324(a)(1)(B)(i) ................................. 2, 6

8 U.S.C. §1324(a) ............................... 6, 14, 16, 24

8 U.S.C. §1324(a)(2) ....................................passim

8 U.S.C. §1324(a)(2)(B) .................................... 3, 6

8 U.S.C. §1324(a)(2)(B)(ii) ..........................passim

18 U.S.C. §3553(a) ....................................... 25, 32

18 U.S.C. §3553(c)(2) ........................................ 27

18 U.S.C. §3583(d) .......................................... 32

18 U.S.C. §3583(d)(1) ....................................... 32

18 U.S.C. §3583(d)(2) ....................................... 32

18 U.S.C. §3583(d)(3) .............................. 32, 35, 36

18 U.S.C. §3583(e)(2) .................................. 31, 43

Fed. R. Crim. P. 35........................................... 27

Fed. R. Crim. P. 35(a) ....................................... 26

Fed. R. Crim. P. 43(a) ....................................... 43

Fed. R. Crim. P. 43(a)(3).............................. 33, 34

Fed. R. Crim. P. 51(b) ....................................... 25

Fed. R. Crim. P. 52(b) ..................................passim

U.S.S.G. §5G1.2(b) ................................................ 8

U.S.S.G. §5D1.3(a) .............................................. 32

U.S.S.G. §5D1.3(a)(5) .......................................... 39

U.S.S.G. §5D1.3(a)(10) ......................................... 39

U.S.S.G. §5D1.3(b) .............................................. 32

U.S.S.G. §5D1.3(c) ......................................... 32, 35

## Legislative History:

H.R. Conf. Rep. No. 104–828 (1996) ................... 22

Immigrant Responsibilty Act of 1996,
    Pub.L. No. 104–208, 110 Sts. 3009-546 .......... 21

## Miscellaneous:

Charles Alan Wright et al.,
    *Federal Practice & Procedure* §856
    (3d ed. 2011)...................................................... 29

# United States Court of Appeals

## FOR THE SECOND CIRCUIT
### Docket No. 21-2581

---

UNITED STATES OF AMERICA,
*Appellee,*

v.

JORGE DIAZ-MEJIAS,
*Defendant,*

ESTEBAN MORALES-QUIRINO,
*Defendant-Appellant.*

---

**BRIEF FOR THE
UNITED STATES OF AMERICA**

---

## STATEMENT OF THE ISSUES PRESENTED

1. Whether, if defendant did not waive the claim, the district court plainly erred by determining at sentencing that the defendant was subject to a five-year mandatory minimum prison term based on his guilty plea to three counts of alien smuggling arising from his transportation of three aliens away from the border at the same time.

2. Whether the district court plainly erred by imposing supervised release conditions requiring the defendant to provide the Probation Office with access to his financial information and to submit to

searches based on reasonable suspicion, as part of the "standard conditions" of supervised release listed in its written judgment, where the district court did not orally pronounce those conditions at sentencing.

## STATEMENT OF THE CASE

### A. Introduction

Defendant-Appellant Esteban Morales-Quirino challenges the sentence imposed by the United States District Court for the Northern District of New York (D'Agostino, *J.*) following his conviction for conspiracy to commit alien smuggling and three substantive counts of alien smuggling. Morales-Quirino contends, *inter alia*: (1) the district court's imposition of the five-year mandatory minimum prison term for the third substantive count of alien smuggling was procedurally and substantively unreasonable; and (2) the district court erred by imposing two supervised release conditions in the written judgment that were not pronounced orally at sentencing. Brief for Defendant-Appellant ("Br") 18-24.

### B. Procedural History

On August 7, 2019, a federal grand jury in the Northern District of New York returned a four-count indictment charging Morales-Quirino with conspiracy to commit alien smuggling, in violation of 8 U.S.C. §1324(a)(1)(A)(i), (a)(1)(A)(v)(I), and (a)(1)(B)(i) [Count One]; and three counts of alien

smuggling, in violation of 8 U.S.C. §1324(a)(2) and (a)(2)(B) [Counts Two, Three, and Four]. A:23-25.[1]

On June 4, 2021, Morales-Quirino pleaded guilty to all four counts of the indictment pursuant to a written plea agreement. A:26-49. The plea agreement contained a waiver of Morales-Quirino's right to appeal, *inter alia*, any sentence to a term of imprisonment of 60 months or less. A:55. On October 6, 2021, the district court sentenced Morales-Quirino principally to a total prison term of 60 months, to be followed by a one-year term of supervised release. A:86-87. The court filed its written judgment on October 7, 2021, which contained fifteen "standard conditions" of supervised release, including a condition that required Morales-Quirino to provide the Probation Office with access to his financial information (Standard Condition 14) and a condition that subjected him to searches of his person and property upon reasonable suspicion of a violation of supervised release or unlawful conduct (Standard Condition 15). A:93.

---

[1] References to "A:" and "GA:" are to the appendix filed by Morales-Quirino, and the government's proposed supplemental appendix, respectively. References to "2d Cir. Dkt." are to docket entries in this appeal. References to "PSR" are to the presentence investigation report filed by the Probation Office for the Northern District of New York on September 8, 2021. A copy of the PSR has been provided to the Court.

According to a Bureau of Prisons website, Morales-Quirino will complete his prison term on January 24, 2025.

Morales-Quirino filed a timely notice of appeal on October 13, 2021. A:97. On October 28, 2022, appellate counsel for Morales-Quirino filed an *Anders*[2] motion with this Court. 2d Cir Dkt. 70. The government responded by moving to dismiss the appeal in part on the basis of the appeal waiver and for summary affirmance. 2d Cir. Dkt. 83. On August 23, 2023, this Court denied the *Anders* motion, and deferred consideration of the government's motion. 2d Cir. Dkt. 100. Instead, the Court ordered the parties to brief whether the appeal waiver in the plea agreement was valid, whether Morales-Quirino was incorrectly subjected to a five-year mandatory minimum prison term, and whether Standard Conditions 14 and 15 were properly imposed, even though not orally pronounced at sentencing. *Id*.

---

[2] *Anders v. California*, 386 U.S. 738 (1967).

## STATEMENT OF FACTS

### A. Offense Conduct[3]

On July 29, 2019, Morales-Quirino and co-defendant Jorge Diaz-Mejias drove from Indiana to Clinton County, New York to pick up people they knew were illegally entering the United States from Canada. At approximately 3:50 a.m., Morales-Quirino and Diaz-Mejias drove to an area near the U.S./Canadian international border, and picked up three people, all aliens and citizens of Mexico, believed to have the initials "G.A.-G., En.A.-B., and El. A.-B." A:53. There was no record of the aliens entering the United States through a lawful port of entry, and none had any immigration documents entitling them to be in the United States. A:53. Morales-Quirino knew that these individuals did not have prior authorization to enter or reside in the United States. A:54.

At the pickup location, Diaz-Mejias paid a foot guide $4,600 for having led the aliens across the border. Morales-Quirino and Diaz-Mejias were to split payment for transporting the aliens from the border to Seymour, Indiana. They already had received $1,500 and were expecting an additional $1,000 upon delivering the aliens to Indiana. A:54.

---

[3] The following account of Morales-Quirino's offense conduct is based on the facts he admitted in his plea agreement, A:53-54, and factual statements in the PSR which the district court adopted without objection, A:80.

As a result of border surveillance, a border patrol agent stopped the car in which Diaz-Mejias and Morales-Quirino were transporting the aliens and arrested the occupants. PSR ¶11.

## B. Indictment and Governing Penalty Provisions

The indictment charged Morales-Quirino and Diaz-Mejias with conspiracy to commit alien smuggling, in violation of 8 U.S.C. §§1324(a)(1)(A)(i) and (a)(1)(B)(i) (Count One); and three counts of alien smuggling, in violation of 8 U.S.C. §§1324(a)(2) and (a)(2)(B), with each substantive count corresponding to one of the aliens that defendants picked up on July 29, 2019 (Counts Two, Three, and Four). A:23-25. As a result, Count Four, which concerned the smuggling of "El. A.-B.," further charged that this was each defendant's third violation of §1324(a)(2). A:25.

Under the penalty provisions of §1324(a), in a case of alien smuggling done for the purpose of commercial advantage or private financial gain, a first or second violation carries a mandatory minimum prison term of three years, 8 U.S.C. §1324(a)(2)(B)(ii), while any additional violation carries a minimum of five years' imprisonment, *id*.

## C. Plea Agreement and Guilty Plea

Morales-Quirino signed a plea agreement with the government on May 10, 2021, in which he

agreed to plead guilty to all four counts of the indictment. A:50-68. The plea agreement stated that the charge in Count Four carried a five-year mandatory minimum term of imprisonment. A:52.

At his change of plea hearing on June 4, 2021, Morales-Quirino pleaded guilty to all four counts of the indictment. A:32-34. The government explained, *inter alia*, that Count Four carried a mandatory minimum prison term of five years. A:41. The government further estimated that Morales-Quirino's initial guidelines imprisonment range, with acceptance of responsibility credit, was 6 to 12 months, but further explained that because of the five-year mandatory minimum term, the "bottom range" of the guidelines was 60 months. A:42. Morales-Quirino confirmed that he understood his guidelines range was 60 months' imprisonment. A:43.

The district court explained that "generally speaking" it did not have authority to impose a prison term below the mandatory minimum, and Morales-Quirino confirmed that he understood this fact. A:43. Morales-Quirino also confirmed that he understood that, under the terms of the plea agreement, he could not appeal his sentence if the court imposed a term of 60 months or less. A:44.

### D. Sentencing Proceedings

#### 1. PSR

The Probation Office prepared a PSR in August 2021, in which it determined that Morales-Quirino was subject to a three-year mandatory minimum prison term on each of Counts Two and Three, and a five-year mandatory minimum prison term on Count Four, pursuant to 8 U.S.C. §1324(a)(2)(B)(ii). PSR ¶57. The Probation Office further determined that Morales-Quirino's total offense level was 10, and his Criminal History Category was I. PSR ¶58. Although this otherwise would have yielded a guideline range of 6 to 12 months, because Morales-Quirino was subject to higher mandatory minimum terms for each substantive alien smuggling count, his guideline range for these counts became the statutory minimum, pursuant to U.S.S.G. §5G1.2(b). *Id.*

As relevant here, the PSR recommended two special conditions of supervised release (related to Morales-Quirino's immigration status). PSR pg. 15. The PSR did not include or refer to the "standard conditions" of supervised release imposed in the Northern District of New York.

#### 2. Sentencing Submissions

Defense counsel filed a sentencing memorandum in which he argued that the district court had discretion to impose a "below-Guidelines" sentence, despite the fact that

8

Morales-Quirino's guideline range was tied to the statutory minimum terms. GA:2-3. Defense counsel sought a sentence that would not involve prison time. GA:6-7. Counsel did not address the proposed special conditions of supervised release, and did not refer to the standard conditions of supervised release in the Northern District of New York.

In its sentencing memorandum, the government explained that Morales-Quirino was subject to a five-year mandatory minimum term of imprisonment on Count Four, and three-year minimum prison terms on Counts Two and Three. GA:10. The government noted that these mandatory minimum terms became the "guideline range" applicable to each of these counts. GA:10. The government requested a prison term "within the applicable guideline range." GA:12-13. The government did not discuss the standard or special conditions of supervised release.

### 3. Sentencing Hearing

At the outset of Morales-Quirino's sentencing hearing on October 6, 2021, the district court sought to address the statements in defense counsel's sentencing memorandum that wrongly suggested that the court had discretion, in the absence of a substantial assistance motion by the government, to sentence Morales-Quirino below the applicable minimum prison terms required by statute. A:70-74.

Defense counsel's answers to the district court's questions indicated that he had advised Morales-Quirino that the court could make an "exception" to the mandatory minimum. A:70. The district court held an *ex parte* colloquy with defense counsel and Morales-Quirino to make certain that Morales-Quirino had an accurate understanding of the mandatory nature of the statutory penalties he faced. A:76-77. Morales-Quirino confirmed, *inter alia*, that he understood, both now and at the time of his plea, that he faced a five-year mandatory minimum prison term on Count Four. A:76.

The district court then reconvened the sentencing hearing with all parties. A:78. The court adopted the factual information in the PSR and determined that Morales-Quirino's initial guidelines range was 6-12 months, but further determined that the guideline range became 36 months on Counts 2 and 3, and 60 months on Count 4, as a result of the mandatory minimum prison terms applicable under §1324(a)(2). A:80.

The district court expressed concern regarding "the manner in which [Morales-Quirino] was indicted," because it subjected him to a five-year mandatory minimum prison term despite his lack of criminal history. A:81-82. After hearing from defense counsel and Morales-Quirino, the court pronounced sentence. It emphasized that, despite its concerns over the mandatory minimum penalty, the underlying crimes were "extremely serious," and that Morales-Quirino was solely responsible for deciding to engage in conduct that carried such

significant penalties. A:84. The district court imposed a prison term of 6 months on Count 1; 36 months on Counts 2 and 3; and 60 months on Count 4, with all terms to run concurrently. A:86.

The court also imposed concurrent one-year terms of supervised release on all counts. A:86-87. The court stated that while on supervised release, Morales-Quirino would be prohibited from committing another federal, state, or local crime, and would be required to "comply with the standard conditions that have been adopted by the Court, as well as the following special conditions, which I find are necessary and justified in this case based upon the nature of the instant offense." A:87. The district court then read the two special conditions that had been proposed in the PSR. A:87.

The court found that Morales-Quirino did not have the ability to pay a fine, but was required to pay a $400 special assessment, due immediately. A:87. The court waived the "$5,000 Justice for Victims of Trafficking Act assessment." A:88.

Finally, the court discussed Morales-Quirino's appeal rights, and noted that he had waived his right to appeal a sentence of imprisonment of 60 months or less in his plea agreement. A:88.

Defense counsel did not object to the sentence or seek further explanation from the district court. A:88.

### 4. District Court Judgment

The district court filed judgment on October 7, 2021. A:90-96. The judgment listed "Standard Conditions of Supervised Release," including Standard Conditions 14 and 15 as follows:

> 14. You must provide the probation officer with access to any requested financial information.

> 15. You must submit your person, and any property, house, residence, vehicle, papers, effects, computer, electronic communications devices, and any data storage devices or media, to search at any time, with or without a warrant, by any federal probation officer, or any other law enforcement officer from whom the Probation Office has requested assistance, with reasonable suspicion concerning a violation of a condition of probation or supervised release or unlawful conduct by you. Any items seized may be removed to the Probation Office or to the office of their designee for a more thorough examination.

A:93. The judgment also listed the special conditions announced by the district court at sentencing. A:94.

### E. Standard Conditions of Supervised Release in the Northern District of New York

Prior to December 15, 2023, the imposition of standard conditions of supervision in the Northern District of New York was governed by General Order #23, promulgated by the district court in November 2016.[4] GA:14-15. Under that order, the court sought "to adopt and expand standard conditions of Probation, Supervised Release, and Pretrial Release for the district." GA:14. General Order #23 expanded the Standard Conditions of Supervised Release to include Conditions 14 and 15—which are identical to those conditions set forth in Morales-Quirino's judgment, and which require supervisees to provide their probation officer with access to financial information, and submit to warrantless searches of their person based on reasonable suspicion. GA:15.

_____

[4] The Probation Office for the Northern District of New York advises that a version of General Order #23, which implemented Standard Conditions 14 and 15, was first adopted by the district court in September 2011. In addition, the Probation Office advises that the Northern District of New York Board of Judges first adopted a search condition as a standard condition of post-conviction supervision in 2009.

On December 15, 2023, the district court adopted an amended version of General Order #23, which removed Conditions 14 and 15 from the Standard Conditions of Supervised Release. *See* General Order #23 (Amended), *available at* https://perma.cc/UFX6-RPTC.

## SUMMARY OF ARGUMENT

Even assuming, *arguendo*, that Morales-Quirino's appeal waiver does not preclude his procedural and substantive challenge to his 60-month sentence, his claims lack merit and should be rejected. The plain language of §1324(a)(2), its legislative history, and the unanimous decisions of other Circuits preclude a finding of error, let alone plain error, in the district court's determination that Morales-Quirino's conviction of three counts of alien smuggling—with each count corresponding to one of the aliens he smuggled on July 29, 2019—constituted three "violations" of §1324(a) and therefore triggered the five year statutory minimum under §1324(a)(2)(B)(ii). Because the statute is not ambiguous in requiring violations to be counted on a "per-alien" basis, it cannot be found "void for vagueness" and the rule of lenity does not apply. Moreover, the district court's imposition of the applicable statutory minimum sentence cannot be substantively unreasonable.

The Northern District of New York did not plainly err by promulgating General Order #23, which added Special Conditions 14 and 15 to the

list of "standard conditions" imposed in every criminal case in the district. There is no controlling law that prohibited the district court from expanding the number of standard conditions. Likewise, there was no clear or obvious error in the district's apparent determination that the challenged conditions—which require disclosure of financial information and make supervisees subject to searches based on reasonable suspicion—were so necessary to the effective administration of supervised release as to be properly viewed as "standard" conditions. These conditions did not constitute additional punishment or prohibit non-criminal behavior. While the conditions arguably imposed additional burdens on supervisees, the Northern District of New York was not obviously wrong in finding that these burdens were implicit in post-conviction supervision, given that the liberty interests of supervisees are severely diminished by their status alone. Moreover, the challenged conditions do not impose markedly more severe burdens than federal supervisees already face as a result of other mandatory and standard conditions. Because there was no plain error in the promulgation of Standard Conditions 14 and 15, the district court did not have to announce these conditions orally at sentencing.

## ARGUMENT

**POINT I:** **The District Court Did Not Plainly Err by Determining that Morales-Quirino was Subject to a Five-Year Mandatory Minimum Prison Term on Count Four.**

### A. Governing Law

Section 1324(a) provides:

(2) Any person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such alien, regardless of any official action which may later be taken with respect to such alien shall, *for each alien in respect to whom a violation of this paragraph occurs*—

(A) be fined in accordance with title 18 or imprisoned not more than one year, or both; or

(B) in the case of—

…

(ii) an offense done for the purpose of commercial advantage or private financial gain …

be fined under title 18 and shall be imprisoned, in the case of a first or second violation of subparagraph (B)(iii), not more than 10 years, in the case of a first or second violation of subparagraph (B)(i) or (B)(ii), not less than 3 nor more than 10 years, *and for any other violation, not less than 5 nor more than 15 years.*

8 U.S.C. §1324(a)(2) (emphasis added).

## B. Standard of Review

Where a defendant does not object to the district court's determination of the applicable statutory penalties, the defendant's claim of procedural error on appeal is reviewed for plain error with "full rigor," particularly where those penalties were disclosed in the PSR. *See, e.g.*, *United States v. Sanchez,* 773 F.3d 389, 391 (2d Cir. 2014) (applying plain error review to claim of improper application of enhanced statutory minimum prison term as a result of prior conviction); *see also United States v. Gordon*, 291 F.3d 181, 191 (2d Cir. 2002) (explaining that plain error review applies with "full rigor" to claim of guideline miscalculation where appellant had prior notice of alleged error from PSR).

To satisfy the plain error standard, Morales-Quirino must show a "clear or obvious" error that prejudicially affected his substantial rights and seriously affected the fairness, integrity, or public

reputation of judicial proceedings. *United States v. Villafuerte*, 502 F.3d 204, 209 (2d Cir. 2007). This Court has explained:

> Whether an error is plain "can depend on well-settled legal *principles* as much as well-settled legal precedents." *United States v. Brown*, 352 F.3d 654, 664 (2d Cir. 2003). Thus, "[e]ven absent binding case law ... an error can be plain if it violates an absolutely clear legal norm, for example, because of the clarity of a statutory provision." *In re Sealed Case*, 573 F.3d 844, 851 (D.C. Cir. 2009) (internal quotation marks omitted).

*United States v. Montague*, 67 F.4th 520, 535 (2d Cir. 2023); *see also United States v. Whab*, 355 F.3d 155, 158 (2d Cir. 2004) ("[W]e can notice plain error that does not contravene clearly established precedent where such error is ... obvious.") (internal quotation marks, alteration, and citation omitted).

Nevertheless, as the Supreme Court emphasized in *United States v. Olano*, 507 U.S. 725, 732 (1993), "the authority created by Rule 52(b) is circumscribed." This Court has recognized that "reversal for plain error should 'be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *Villafuerte*, 502 F.3d at 209 (quoting *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982)).

## C. Discussion

As an initial matter, Morales-Quirino's challenge to his 60-month prison term is foreclosed by the waiver of appeal in his plea agreement, A:55, and should not be considered by this Court, *see, e.g.*, *United States v. Seamans*, No. 22-1119-CR, 2024 WL 177708, at *2 (2d Cir. Jan. 17, 2024) (holding claim of guideline error to be precluded by appeal waiver where defendant sentenced to prison term within range specified by similar appeal waiver); *cf. United States v. Hester*, 589 F.3d 86, 94 (2d Cir. 2009) (holding constitutional challenge to sentence precluded where defendant received prison term within range specified by appeal waiver).

In the event that this Court finds that the appeal waiver in Morales-Quirino's plea agreement is invalid,[5] the Court should nevertheless hold that the district court did not commit plain error in determining that Morales-Quirino was subject to a five-year mandatory minimum prison term as a result of his conviction on Count Four. The plain text of the §1324(a)(2)(B)(ii), its legislative history, and the decisions of other Circuits establish that Morales-Quirino's guilty plea to Count Four established his third "violation" of the alien smuggling statute,

---

[5] The validity of the plea agreement and appeal waiver in this case are discussed in a separate brief filed under seal, as permitted by this Court's order of April 10, 2024.

triggering the five-year mandatory minimum, even though all three violations occurred at the same time.

### 1. The meaning of the statutory text is clear.

Section 1324(a)(2) provides that a defendant is subject to penalties under the statute "for *each alien* in respect to whom *a violation* of this paragraph occurs," and in the case of "an offense for … private financial gain," those penalties include a five-year mandatory minimum "for any other *violation*" after the defendant's "second *violation*." 8 U.S.C. §1324(a)(2)(B)(ii) (emphasis added). The plain language of the statute thus makes clear (a) that violations are to be counted on a per-alien basis ("for each alien with respect to whom a violation" occurs), and (b) that the penalties are to be assessed based on the number of such "violations."

The Eleventh Circuit explained as much in *United States v. Ortega-Torres*, 174 F.3d 1199, 1201 (11th Cir. 1999): "The use of the terms 'each alien' and 'violation' together in the introductory sentence of §1324(a)(2) make clear that courts should count each alien as a separate violation for sentencing purposes."

### 2. The legislative history of §1324(a)(2) confirms its plain meaning.

As discussed persuasively in *Ortega-Torres*, 174 F.3d at 1201, the legislative history of §1324(a)(2) makes clear that the penalties are based on the number of aliens involved in the smuggling conduct, not the number of financial transactions from which the defendants receive renumeration. The court explained:

> In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, 110 Stat. 3009–546. Prior to the IIRIRA, the statute provided that punishment be administered "for each transaction constituting a violation of this paragraph, regardless of the number of aliens involved." 8 U.S.C. § 1324(a)(2) (1996). In a section entitled "Applying Certain Penalties on a Per Alien Basis," the IIRIRA struck the "for each transaction constituting a violation" language of § 1324(a)(2), and replaced it with the current language, "for each alien in respect to whom a violation of this paragraph occurs." IIRIRA, Pub.L. No. 104–208, 110 Stat. 3009–546, 3009–566. In changing the text of the statute, Congress clearly expressed its intent that district courts determine the penalties for alien smuggling offenses based on the number of aliens the defendant smuggled into the United States. The accompanying

Conference Report lends further support to this interpretation. *See* H.R. Conf. Rep. No. 104–828, at 204 (1996) ("Henceforth, an offense will be counted for each alien smuggled, not, as under current law, for each transaction regardless of the number of aliens involved").

*Ortega-Torres*, 1174 F.3d at 1201.

### 3. The rule of lenity is inapplicable.

The rule of lenity "is a tool of last resort reserved for cases where, after seizing everything from which aid can be derived, the Court is left with an ambiguous statute." *United States v. Tabb*, 949 F.3d 81, 89 (2d Cir. 2020) (internal quotation marks omitted). As discussed, above, the plain text and the legislative history of §1324(a)(2) make clear that the five-year minimum penalty is triggered whenever more than two aliens are smuggled during the same incident. The rule of lenity does not apply here. *See, e.g.*, *Deal v. United States*, 508 U.S. 129, 136 (1993) (where statutory text is unambiguous, there is "no occasion to invoke the rule of lenity").

### 4. The statute is not unconstitutionally vague.

Although Morales-Quirino asserts that the term "violation" in §1324(a)(2)(B)(ii) is "unconstitutionally vague," Br. 20, he does not support this claim with developed argument.

Accordingly, this Court should not consider the claim here. *See, e.g., United States v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). At any rate, the statute is clear for the reasons discussed above.

### 5. Any error is not plain.

*Ortega-Torres*, *supra,* is the leading case in this area. The Eleventh Circuit has repeatedly affirmed the decision in *Ortega-Torres. See United States v. Raad*, 406 F.3d 1322, 1323 n.2 (11th Cir. 2005); *United States v. Aguilar*, 188 F. App'x 897, 902 (11th Cir. 2006); *United States v. Bethel*, Case No. 22-14025, 2023 WL 7436912, at *1 (11th Cir. Nov. 9, 2023); *United States v. Stuart*, No. 23-11760, 2024 WL 914027, at *1 (11th Cir. Mar. 4, 2024). And other Circuits uniformly have agreed with the Eleventh Circuit's analysis. *See, e.g., United States v. Gonzalez-Torres*, 309 F.3d 594, 602 (9th Cir. 2002) (finding that plain text and legislative history require that penalties under §1324(a)(2) be assessed for each alien smuggled); *United States v. Tsai*, 282 F.3d 690, 698 (9th Cir. 2002) (noting that it appears, based on text of §1324(a)(2), that a "single transaction involving three aliens may count as a first, second, and third violation"); *United States v. Yeh*, 278 F.3d 9, 16 (D.C. Cir. 2002) (adopting view of Eleventh Circuit and concluding that five-year mandatory minimum applied to defendants' attempt to bring 200 aliens

into the United States at one time on the same ship). The government is not aware of contrary authority.

Because Morales-Quirino did not challenge the application of the mandatory minimum prison term below, any such claim on appeal is subject to plain error review. For an error to be plain it must be "clear or obvious, rather than subject to reasonable dispute." *United States v. Marcus*, 560 U.S. 258, 262, (2010) (internal quotation marks omitted). Given the plain text of §1324(a), the legislative history, and the consensus of legal authority arrayed against him, Morales-Quirino cannot establish error, much less "plain error," in the district court's application of the five-year mandatory minimum prison term based on his smuggling of three aliens into the United States simultaneously. The same applies to his claim of unconstitutional vagueness. The smuggling of each alien constituted a separate violation of the statute, triggering a five-year mandatory minimum for the offense charged in Count Four. There was no plain error.

## 6. The sentence was substantively reasonable.

Finally, insofar as Morales-Quirino challenges the substantive reasonableness of his sentence, that claim is likewise waived by his appeal waiver, and, in any event, is without merit. This Court has held that "a mandatory minimum sentence controls over the Section 3553(a) factors." *United*

States v. Compres, 614 F. App'x 36, 37 (2d Cir. 2015), *citing United States v. Samas*, 561 F.3d 108, 110 (2d Cir. 2009) ("[A] district court must impose a statutorily mandated sentence even if the court would reach a different determination if it considered only §3553(a)."). Accordingly, the district court's decision to impose the statutorily required minimum prison term cannot be substantively unreasonable. *See also United States v. Carter*, 696 F.3d 229, 230 (2d Cir. 2012) ("[A] statutory mandatory minimum binds a sentencing court by explicitly providing a sentencing floor.").

## POINT II: Morales-Quirino Fails to Establish Plain Error in the Imposition of Standard Conditions 14 and 15.

### A. Standard of Review

Morales-Quirino did not object to the imposition of Standard Conditions 14 and 15 at sentencing, or raise any claim that the district court was required to explain those conditions. Accordingly, his challenge to Standard Conditions 14 and 15 in this appeal should be reviewed under the plain error standard. *Villafuerte*, 502 F.3d 204, 211 (2d Cir. 2007); *see* Fed. R. Crim. P. 52(b).

Under Fed. R. Crim. P. 51(b), "[i]f a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party." Here, however, the circumstances show that Morales-Quirino had such an opportunity. The plea agreement made

Morales-Quirino aware of the possibility that he could be placed on supervised release after serving his prison term, and that a violation of "one of more supervised release conditions" could result in an additional period of imprisonment, an extension of his supervised release term, and possible modification of the conditions of his supervised release. A:52, 60. At his change of plea hearing, the government also advised Morales-Quirino that he could face up to a three-year term of supervised release, and reiterated that a violation of the conditions of his release could result in further incarceration. A:41. Accordingly, Morales-Quirino was aware that his supervised release would be subject to conditions, and those conditions were important because a violation of them could result in further imprisonment. At sentencing, however, Morales-Quirino did not ask for any explanation when the district court explained that he would be required "to comply" with various conditions, including "the standard conditions that have been adopted by this Court, as well as the following special conditions …." A:87. If Morales-Quirino or defense counsel had questions about what the "standard conditions" were, either could have sought clarification, but they did not do so.

Moreover, defense counsel did not move under Fed. R. Crim. P. 35(a) to correct the district court's judgment, after that judgment was filed on the docket. Defense counsel would have a received a copy of the judgment through the district court's electronic case filing system, and thus would have been aware that the judgment contained Special

Conditions 14 and 15. Defense counsel did not challenge their inclusion in the written judgment in any manner. This inaction further warrants plain error review. In *United States v. Verkhoglyad*, 516 F.3d 122, 133 (2d Cir. 2008), this Court found that plain error applied where a defendant challenged the district court's failure to memorialize its reasons for an above-guideline sentence in its written judgment. The Court explained that "[b]ecause *Verkhoglyad* did not move in the district court to amend the judgment to memorialize the court's sentencing reasons … we review his § 3553(c)(2) challenge only for plain error." *Id.* 133 n.8. Likewise, in *United States v. Mordini*, 366 F.3d 93, 95 (2d Cir. 2004), the Court applied plain error to the defendant's challenge to an improper assessment because the defendant failed to object at sentencing or move to correct the written judgment under Rule 35. Here, too, if defense counsel believed that Standard Conditions 14 and 15 were improperly added to the written judgment, he could have sought to correct the judgment under Rule 35. His failure to do so requires plain error review on appeal.

When reviewing challenges to special conditions of supervised release, this Court has sometimes applied a "relaxed" form of plain error where the defendant "lacked sufficient notice of the challenged conditions." As discussed above, the circumstances do not warrant any such "relaxation" because Morales-Quirino and his attorney had an opportunity to object to the imposition of the "standard conditions" and seek

the removal of Standard Conditions 14 and 15. *Cf. United States v. Green*, 618 F.3d 120, 122 (2d Cir. 2010) (applying relaxed plain error where defendant was "completely deprived of any opportunity to object" to special condition); *United States v. Matta*, 777 F.3d 116, 121-22 (2d Cir. 2015) (applying relaxed plain error where defendant did not have "a sufficient opportunity to raise a contemporaneous objection" to special condition of supervised release not fully disclosed at sentencing).

More fundamentally, "relaxed" plain error review, the contours of which remain unclear,[6] has no basis in the Federal Rules of Criminal Procedure, and cannot be squared with Supreme Court precedent. In *Puckett v. United States*, 556 U.S. 129 (2009), a case involving an unpreserved claim that the government breached a plea agreement, the Supreme Court held that the plain error standard in Rule 52(b) applies to *all* forfeited claims, regardless of the "seriousness of the error claimed," and is "compelled by the Federal Rules." 556 U.S. at 134-36, 143. The Court emphasized that "appellate-court authority to remedy [an

---

[6] *Compare United States v. Haverkamp*, 958 F.3d 145, 150 (2d Cir. 2020) ("Applying relaxed plain error review requires the appellant to demonstrate that there is an error, and that the error is clear and obvious.") *with United States v. Washington*, 904 F.3d 204, 207 (2d Cir. 2018) (explaining that "relaxing" plain error standard means "we will review the issue de novo").

unpreserved error] … is strictly circumscribed" by Rule 52(b). *Id.* at 134. The Court further noted that it had "repeatedly cautioned that any unwarranted extension of the authority granted by Rule 52(b) would disturb the careful balance it strikes between judicial efficiency and the redress of injustice; and that the creation of an unjustified exception to the Rule would be even less appropriate." *Id.* at 135. Likewise, in *United States v. Marcus*, 560 U.S. 258 (2010), the Supreme Court overturned a Second Circuit decision, noting that a standard requiring reversal for unpreserved errors that does not meet the strict criteria for plain error is "irreconcilable with our 'plain error' precedent." 560 U.S. at 263. Although the government recognizes that this Court has continued to apply "relaxed plain error" on occasion even after *Puckett* and *Marcus*, *see, e.g.*, *United States v. Reeves*, 591 F.3d 77, 80 (2d Cir. 2010), the Court has never explained how this "relaxed" approach is consistent with the text of Rule 52(b) and the Supreme Court's interpretation of that rule in *Puckett* and *Marcus*. *See* Charles Alan Wright et al., *Federal Practice & Procedure* §856 (3d ed. 2011) ("There would seem to be no error to which plain error review would not apply …. No exception for sentencing errors appears in either the Rule [52(b)] or the [Supreme] Court's cases interpreting the rule."); *United States v. Wagner-Dano*, 679 F.3d 83, 91 (2d Cir. 2012) (citing this discussion in *Federal Practice & Procedure*).

The validity of "relaxed plain error" review has been further undermined by recent Supreme Court

decisions applying regular plain error review to claims of error *at sentencing*. This Court originally justified its application of "relaxed" plain error, in part, by noting that the Supreme Court had "never applied the *Olano* formulation of the plain error doctrine to ignore a judge's sentencing error that affected substantial rights, nor required a court of appeals to do so." *United States v. Williams*, 399 F.3d 450, 457 (2d Cir. 2005). Likewise, this Court has observed repeatedly that relaxed plain error is warranted in the sentencing context because "the cost of correcting an unpreserved error is not as great as in the trial context." *United States v. Gamez*, 577 F.3d 394, 397 (2d Cir. 2009). However, the Supreme Court, citing *Olano*, recently explained in a case involving claimed error at sentencing that "[t]he text of Rule 52(b) does not immunize factual errors from plain error review," and emphasized once again that "[o]ur cases likewise do not purport to shield *any category of errors* from plain error review." *Davis v. United States*, 140 S. Ct. 1060, 1061-62 (2020) (per curiam) (emphasis added); *see also Rosales-Mireles v. United States*, 585 U.S. 129, 137-45 (2018) (applying ordinary plain-error review to claim of guidelines error at sentencing); *Henderson v. United States*, 568 U.S. 266, 271-74 (2013) (applying ordinary plain-error review at sentencing). In light of the Supreme Court's continued application of *Olano*'s rigorous plain error standards at sentencing, this Court should no longer apply a relaxed plain error standard that is inconsistent with Supreme Court jurisprudence. Creating an exception to regular plain error review

for supervised release conditions is particularly inappropriate because a defendant can seek modification of those conditions at a later date. 18 U.S.C. §3583(e)(2).[7]

---

[7] This Court has applied the relaxed plain error standard to alleged sentencing error relating to conditions of supervised release since the Supreme Court's decision in *Davis*, but has not yet, to the Government's knowledge, directly addressed the implications of the opinions in *Davis*, *Rosales-Mireles*, or *Henderson* for the "relaxed" plain error standard of review. *See, e.g., United States v. Bernard*, No. 23-6646, 2024 WL 1904576, at *1 n.2 (2d Cir. May 1, 2024) (explaining that conditions for "relaxed" plain error were not met, thus obviating need to address government challenge to validity of that standard); *United States v. Hart*, 852 F. App'x 596, 603 n.4 (2d Cir. 2021); *see also United States v. Osuba*, 67 F.4th 56, 65 n.6 (2d Cir. 2023) (acknowledging uncertainty over continued validity of "relaxed plain error" in light of *Davis* but finding it unnecessary to address the issue given failure of defendant's claim under either "flavor" of plain error review).

**B. Governing Law**

### 1. Mandatory, Discretionary, and Standard Conditions of Supervised Release

When a district court orders a term of supervised release as a part of a sentence, the court is required under 18 U.S.C. §3583(d) to impose certain "mandatory" conditions of supervision specified in the statute. The same statute authorizes courts to impose "discretionary" conditions provided certain requirements are met—namely, that the conditions are reasonably related to the applicable sentencing factors under 18 U.S.C. §3553(a); involve no greater deprivation of liberty than is reasonably necessary to achieve the sentencing purposes of deterrence, protection of the public, and rehabilitation; and are consistent with applicable Sentencing Commission policy statements. 18 U.S.C. §3583(d)(1)-(3).

The Sentencing Guidelines list the mandatory conditions required by applicable statutes under U.S.S.G. §5D1.3(a). The Guidelines also list the requirements for imposing discretionary conditions under U.S.S.G. §5D1.3(b).

In addition, U.S.S.G. §5D1.3(c) sets forth a policy statement recommending thirteen "standard" conditions of supervised release. This set of conditions does *not* include the financial records disclosure and search conditions imposed as Standard Conditions 14 and 15 in this case.

## 2. Requirements for Defendant's Presence When Imposing Conditions of Supervised Release

Federal Rule of Criminal Procedure 43(a)(3) requires that a defendant "be present at … sentencing." This Court has explained that "[i]n light of this rule … [i]t is the oral sentence which constitutes the judgment of the court," and the written judgment is "mere evidence of the sentence imposed orally in court by the judge." *United States v. Thomas*, 299 F.3d 150, 152 (2d Cir. 2002). Accordingly, when "an unambiguous oral sentence conflicts with the written judgment, the constitutional right of a defendant to be present at sentencing dictates that the oral pronouncement of sentence must control." *Id.* at 153.

This Court, however, has long held that certain conditions of supervised release do not have to be orally pronounced at sentencing, but may be set forth for the first time in a written judgment. These conditions fall into three general categories: (1) conditions that are listed as "mandatory" or "standard" in the Sentencing Guidelines, *United States v. Truscello*, 168 F.3d 61, 63-64 (2d Cir. 1999); (2) conditions "recommended" by the Guidelines where the qualifying circumstances are present, *see United States v. Asuncion-Pimental*, 290 F.3d 91, 94 (2d Cir. 2002); and (3) "basic administrative requirements" that are "necessary to supervised release," *Thomas*, 299 F.3d at 154. *See generally United States v. Rosario*, 386 F.3d

166, 169 (2d Cir. 2004). These categories are fluid because, fundamentally, the test this Circuit applies for whether a condition has to be orally pronounced is a functional one. "Implicit in the very nature of supervised release is that certain conditions are necessary to effect its purpose." *Truscello*, 168 F.3d at 62. Regardless of how a condition is labeled, if the condition is one that is so "necessary" or "appropriate" to "effect the purpose" of supervised release, 168 F.3d at 63, 64, that its inclusion in the written judgment constitutes only "a clarification of what the oral pronouncement meant by 'supervised release,'" *id*. at 63, or otherwise is so "generally recommended" as to be effectively "standard," *Asuncion-Pimental*, 290 F.3d at 94, that condition does not have to be orally pronounced.

A judge does not comply with Rule 43(a)(3), however, where a condition of supervision appears for the first time in a written judgment and that condition is not "mandatory" under the Guidelines (or statute), "specifically recommended" by the Guidelines, or otherwise "a basic requirement for the administration of supervised release." *Thomas*, 299 F.3d at 155; *see also United States v. Jacques*, 321 F.3d 255, 264 (2d Cir. 2003). This Court has explained that such conditions "do not simply clarify ambiguity in the oral imposition of supervised release, they place additional burdens on the defendant that are neither necessary to nor a foreseeable result of the imposition of supervised release." *Thomas*, 299 F.3d at 155; *see also United*

*States v. Traficante*, 966 F.3d 99, 105 (2d Cir. 2020).

## C. Discussion

The central question in assessing Morales-Quirino's challenge to Standard Conditions 14 and 15 is whether controlling law prohibited the United States District Court for the Northern District of New York from expanding the number of such standard conditions in the district to include the financial records disclosure and search conditions. If the promulgation of General Order #23[8] was not contrary to clearly established legal principles, statutes, or case law, there can be no "plain error" in the district court's failure to orally pronounce these conditions at sentencing. *Montague*, 67 F.4th at 535.

Although all discretionary conditions imposed by court must be "consistent with any pertinent policy statements issued by the Sentencing Commission," 18 U.S.C. §3583(d)(3), the policy statement listing "standard conditions" does not state that this list is exhaustive, let alone that district courts cannot add additional "standard conditions" where appropriate. U.S.S.G. §5D1.3(c). It states only that the listed conditions are "recommended" for supervised release, and that

---

[8] Unless noted, references to "General Order #23" are to the general order prior to its most recent amendment on December 15, 2023. GA:14-15.

"several," but not all, of these conditions are
"expansions of the conditions required by statute."
*Id*. Thus, the guideline makes clear that the set of
"standard conditions" is not limited by statutory
mandates. Given the lack of controlling law
precluding district courts from expanding the set
of "standard conditions," Morales-Quirino cannot
establish plain error.

Moreover, this Court's functional approach to
determining whether a condition must be
pronounced orally at sentencing further
undermines a claim that the district court plainly
erred by promulgating General Order #23. While
*Thomas* held that a judge was required to orally
pronounce conditions that prohibit "non-criminal
behavior" or that "place additional burdens on the
defendant that are neither necessary to nor a
foreseeable result of the imposition of supervised
release," 299 F.3d at 155, this Court has left open
the possibility that other conditions, besides those
labeled "standard" by the Guidelines, may be found
to be so "appropriate to effect the purpose of
supervised release," *Truscello*, 168 F.3d at 64, or so
"basic" to "the administration of supervised
release," *Thomas*, 299 F.3d at 155, that they are
"[i]mplicit in the very nature of supervised
release," *Truscello*, 168 F.3d at 63.

Here, when it originally promulgated General
Order #23, the Northern District of New York
evidently determined that the financial records
disclosure and search conditions each should be
considered "so necessary to effect the purpose the

supervised release" as to be "uniformly imposed" in all cases where supervised release was ordered. *Truscello*, 168 F.3d at 63, 64. The government is not aware of controlling authority that holds that this determination was contrary to law or otherwise incorrect. The fact that Standard Conditions 14 and 15 were operative for more than twelve years without challenge, *see supra* n.4, further suggests that there was no obvious error in the conclusion that these conditions are an implicit part of supervised release.[9]

The promulgation of Standard Conditions 14 and 15 do not run afoul of the functional criteria this Court uses to determine what conditions must be orally imposed. The conditions do not "constitute additional punishment," *id.* at 64; nor do they prohibit "non-criminal" behavior, *Thomas*, 299 F.3d at 155. While these conditions arguably place additional burdens on defendants, Morales-Quirino cannot show that it was *plain* error the Northern District of New York to have found these burdens to be a "necessary" and "foreseeable" part

---

[9] That the Northern District of New York has recently removed these conditions from General Order #23 should not be viewed as a concession of error by the court, but merely a recognition of the legal uncertainty engendered by this Court's numerous *sua sponte* orders in recent months seeking briefing on the issue, and the availability of modification procedures to impose the same conditions as "special conditions."

of supervision. *Id.* While financial records disclosure and search conditions intrude on the privacy interests of supervisees, an offender on supervised release has a "diminished expectation of privacy that is inherent in the very term '*supervised* release.'" *United States v. Reyes*, 283 F.3d 446, 460 (2d Cir. 2002). Like parolees, federal supervisees "have severely diminished expectations of privacy by virtue of their status alone."[10] *Samson v. California*, 547 U.S. 843, 852 (2006). This Court has explained that, on the continuum between parole and probation, supervised release imposes restrictions on a defendant's liberty that can be viewed as either the "most severe," *United States v. Balon*, 384 F.3d 38, 44 (2d Cir. 2024) (internal quotation marks omitted), or at least equally severe to the restrictions imposed by parole, *United States v. Oliveras*, 96 F.4th 298, 308 n.1 (2d Cir. 2024); *see also Malvasi v. U.S. Dep't of Prob.*, 246 F. App'x 11, 13 (2d Cir. 2007) (noting that "individuals under supervised release have, if anything, a lesser reasonable expectation of privacy than individuals on probation"). In other words, this Court has recognized that federal supervision may entail similar or greater restrictions on privacy than other forms of supervision. It was not clearly or obviously wrong for the Northern District of New

_____

[10] As this Court has explained, it is appropriate to refer to case law related to parole and probation in determining the Fourth Amendment rights of federal supervisees. *United States v. Newton*, 369 F.3d 659, 665 n.2 (2d Cir. 2004).

York to decide that the financial records disclosure and search conditions at issue in this case should be included among the "severe" restrictions on privacy that are inherently part of what it means to be under federal supervision.

Neither the financial records disclosure nor search condition at issue here is markedly more intrusive than other conditions of supervision that are imposed in almost all cases. Although Standard Condition 14 does not require a showing of individualized suspicion before a probation officer can demand disclosure of financial records, federal supervisees are subject to similar intrusions as mandatory conditions of supervision. A supervisee convicted of "any crime" is subject to periodic drug testing under U.S.S.G. §5D1.3(a)(5), whether or not the probation office suspects drug use, although that condition may be ameliorated or suspended by the court, *id.* Courts have upheld this requirement because it furthers the legitimate aim of preventing supervisees from engaging in unlawful use of controlled substances. *See, e.g.*, *United States v. Wright*, 86 F.3d 64, 65 (5th Cir. 1996). Likewise, all federal supervisees must submit to the collection of DNA samples under U.S.S.G. §5D1.3(a)(10), a requirement that likewise has been upheld by this Court based on the special needs of supervision. *Malvasi*, 246 F. App'x at 13; *see also United States v. Amerson*, 483 F.3d 73 (2d Cir. 2007). These bodily intrusions are arguably more invasive than permitting a probation officer to examine one's financial papers, or authorizing the officer to conduct a search upon

reasonable suspicion of a violation of supervised release and/or illegal activity.

Most importantly, the Supreme Court has upheld suspicionless searches of parolees under a "totality of the circumstances" test, finding that a parolee's "severely diminished expectations of privacy" are outweighed by the government's "overwhelming interest" in preventing recidivism and promoting a parolee's reintegration into society. *Samson*, 547 U.S. at 852-54 (internal quotation marks omitted). As this Court recognized in *Reyes*, "[t]he overwhelming interest in ensuring that a parolee complies with parole requirements and is returned to prison if he fails to do so, also exists *in full measure* with respect to a convicted person serving a term of federal supervised release." 283 F.3d at 462 (internal quotation marks, citation, and brackets omitted; emphasis added). Here, again, the Northern District of New York's determination that access to a supervisee's financial records can be considered a basic requirement of supervised release in all cases was not outside the bounds of permissible decisions.

The financial records disclosure condition facilitates effective supervision in a number of ways. Access to a defendant's financial information allows the probation officer, *inter alia*, to (a) confirm a defendant's compliance with the standard condition requiring supervisees to hold full time employment; (b) become aware of any unexplained sources of income, or unexplained

cash withdrawals or other expenditures, that could indicate criminal activity; and (c) keep track of spending by supervisees on travel or other out-of-district expenditures that would indicate noncompliance with the standard condition prohibiting unauthorized travel.[11] *See, e.g.*, *United States v. Brown*, 402 F.3d 133, 137 (2d Cir. 2005) (approving decisions of sister circuits which "reasoned that monitoring an offender's finances deters the offender from returning to a life of crime by forcing him to account for his income"). It was not plain error for the Northern District of New York to incorporate the financial records disclosure condition into the standard conditions of supervised release, given that federal supervision inherently involves severely diminished expectations of privacy, and the clear connection between the condition and the effective administration of supervised release.

For similar reasons, the promulgation of Standard Condition 15, authorizing searches by probation officers upon reasonable suspicion of a violation or unlawful conduct, does not violate clearly established law. Numerous state laws, regulations, or judicially-created rules authorize probation or parole searches on the basis of

---

[11] The financial records disclosure condition also facilitates the ability of the probation officer to determine the supervisee's ability to contribute towards the costs of treatment programs and computer monitoring ordered as special conditions of supervision in many cases.

individualized suspicion, further supporting the Northern District of New York's evident determination that being subject to such searches is an inherent part of being under post-release supervision. *See Samson*, 547 U.S. at 855 (noting that "majority" of states have parole systems that authorize searches "based on some level of suspicion") (citing Pet. Br., App. B., *Samson v California*, 2005 WL 3785204, at *1aa-12aa). Although Congress did not impose a search condition as a mandatory condition of supervised release, no controlling precedent, law, or legal principle prohibited the Northern District of New York from concluding that a search condition nonetheless was necessary to the administration of supervised release. Probation officers charged with supervising individuals on supervised release "owe a responsibility to the public to ensure that the offender who poses a threat to public safety is not permitted to remain free, absent compliance with conditions which obviate possible danger." *Reyes*, 283 F.3d at 457 (internal quotations and brackets omitted). Accordingly, probation officers are "given considerable investigative leeway, ... [because,] in bringing a supervisee's offending conduct to the attention of the court, they act as the eyes and ears of the court." *United States v. Elder*, 805 F. App'x 19, 22 (2d Cir. 2020) (internal citation and quotations omitted). Given the weighty interests of the court and public, and the severely reduced privacy interests of supervisees, the Northern District of New York did not plainly err in promulgating the search condition.

Moreover, the promulgation of Standard Conditions 14 and 15 did not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732. In light of the Supreme Court's authorization of suspicionless parole searches; the similarly intrusive conditions already imposed on all federal supervisees; and the prevalence of state laws, regulations, and judicially created rules authorizing probation and parole searches upon some degree of suspicion, General Order #23 does not result in a "manifest injustice," or otherwise bring disrepute on judicial proceedings in the Northern District of New York. Rather, General Order #23 was a reasonable effort by the court to balance the rights of supervisees against the need for effective supervision. As this Court in *Thomas* recognized, "the line between what Rule 43(a) requires district courts to articulate orally and what it does not may be subtle at times." 299 F.3d at 156. If the Northern District of New York strayed over that line by promulgating General Order #23, its error is not so clear or obvious as to constitute plain error. Finally, supervisees can seek modification of supervised release conditions "at any time prior to the expiration or termination of the term of supervised release," pursuant to 18 U.S.C. §3583(e)(2). The availability of this remedy further undermines the claim that the imposition of Standard Conditions 14 and 15 seriously affected the fairness or integrity of the proceedings.

Accordingly, because it was not plain error for the financial records disclosure and search

condition to be included as "Standard Conditions" under General Order #23, the district court did not commit plain error by failing to orally pronounce these conditions at sentencing. *Thomas*, 299 F.3d at 155.

## CONCLUSION

This Court should affirm the judgment of conviction in all respects.

Dated: Syracuse, New York
May 9, 2024

Respectfully submitted,

CARLA B. FREEDMAN
*United States Attorney*
*Northern District of New York*
*Attorney for Appellee*

s/ *Rajit S. Dosanjh*
By: RAJIT S. DOSANJH
*Assistant United States Attorney*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7) of the Federal Rules of Appellate Procedure, the undersigned counsel for the United States hereby certifies that this brief complies with the type volume limitation of Rule 32(a)(7)(B) and Local Rule 32.1. As measured by the word-processing system used to prepare this brief, there are approximately 9,058 words in the brief.

CARLA B. FREEDMAN
*United States Attorney*
*Northern District of New York*

s/ *Rajit S. Dosanjh*
By:   RAJIT S. DOSANJH
*Assistant United States Attorney*

**CERTIFICATE OF SERVICE**
**BY NEXTGEN CM/ECF**

UNITED STATES OF AMERICA
v.
DIAZ-MEJIAS (ESTEBAN MORALES)

Docket No. 21-2581

    The undersigned hereby certifies that she is an employee of the Office of the United States Attorney for the Northern District of New York, and is a person of such age and discretion as to be competent to serve papers.

    She further certifies that on May 9, 2024, she served a copy of the appellee's Brief and Government Appendix on the United States Court of Appeals for the Second Circuit and counsel for appellant, Roland Acevedo, Esq., by uploading to the Second Circuit's ECF system a Portable Document Format (PDF) version of the Brief.

s/ *Deanna Lieberman*
Deanna Lieberman